## Roy Halliburton v. The State.

*No. 576.    Decided May 1.*

1. **Continuance—Bill of Exceptions—Practice.**—Where an application for continuance is made, the application itself should show whether it is a first or second or other application, as the case may be, and if this fact be not shown in the application itself, it should be shown in the bill of exceptions saved to the overruling of the same, or at least in some portion of the record.

2. **Same—Sufficiency of.**—An application for continuance should state definitely the facts expected to be proved; general statements, mere inferences, nor indefinite allegations will suffice.

3. **Same—New Trial—Practice.**—A new trial will not be granted on account of the overruling of an application for continuance, where it appears that some of the absent witnesses were present and were not called to testify; and that they could have testified to all the facts expected to be proved by the other absent witnesses mentioned in the application. Following Easterwood v. The State, ante, p. 400.

4. **Motion for New Trial—Supporting Affidavits.**—Where the motion for new trial was supported, as to additional evidence, by the affidavit of a party who was one of the witnesses named in the application for continuance, and one who was afterwards present in court, but not called as a witness, *Held*, the evidence not being newly discovered, and the witness not having been called, when he could have been, to testify, the motion was properly overruled.

5. **Assault with Intent to Murder—Charge—Aggravated Assault and Battery.**—See facts stated in the opinion, on a trial for assault with intent to murder, upon which it is *Held*, the court did not err in failing to charge upon aggravated assault, and in which the testimony is held amply sufficient to support a conviction for assault with intent to murder.

APPEAL from the District Court of Gonzales. Tried below before Hon. T. H. SPOONER.

This appeal is from a conviction for assault with intent to murder, the punishment assessed being three years' imprisonment in the penitentiary.

The opinion sufficiently states the case.

*W. W. Glass*, for appellant.

· *Mann Trice*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of assault with intent to murder, and prosecutes this appeal. He sought to continue the cause on account of the absence of five witnesses, four of whom had been served with process. By each of these witnesses he expected to prove the same facts, to wit, that they were present and witnessed the entire transaction; that the assault was not made with intent to murder; that the accused had no malice towards Mullins, the assaulted party, and that he had no desire and intent to kill or injure Mullins. It is not stated in the bill of exceptions, nor in the application for continuance, and in no other part of the record, that such application was the first sought by appellant. This should have been done. Arnold v. Hockney, 51 Texas, 46; Attaway v. The State, 31 Texas Crim. Rep., 475. Again, the statements in regard to the expected facts are too general, and more in the nature of conclusions and deductions than a statement of evidence or facts. The facts expected to be proved must be stated definitely. General statements, mere inferences, or indefinite allegations will not suffice. Miller v. The State, 31 Texas Crim. Rep., 609. But conceding this to be the first application, and the facts properly stated, still the motion for a new trial was properly overruled, because two of the mentioned witnesses were in attendance upon the trial, and were not placed on the stand to testify in appellant's behalf, and in fact did not testify. The same facts could have been proved by these two witnesses as by the three who did not attend said trial. He should have called on them to testify. Willson's Crim. Stats., sec. 2186; Easterwood v. The State (just decided, ante, p. 400). Appellant can not be heard to complain in this matter.

Gray's affidavit does not set forth newly discovered testimony, and does not so allege, nor is it claimed to be newly discovered. He was one of the witnesses named in the application for a continuance, and it is not denied that he was one of the two of defendant's witnesses who attended the trial. If he was one of those who attended the trial, he certainly should have been called upon to testify. Willson's Crim. Stats., sec. 2186.

It is contended that the law of aggravated assault and battery should have been given in charge to the jury, and that the evidence does not support this conviction. We can not concur with either contention. Ned Mullins, the assaulted party, testified: "I was at home on that day, sitting in my house, near which the road passed, with my baby in my arms. Defendant, Roy Halliburton, Robert Halliburton, Jack Halliburton, Hickey Halliburton, and Jesse Gray came from towards the Red Horse saloon, and stopped in the road near my house, about fifteen steps from my house, pulled out a bottle of whisky, and commenced drinking and cursing. My wife and children were at my house,

and I spoke to them, saying, 'You all are doing wrong, and don't curse in the front of my house, and in the presence of my wife and children.' I then told them to leave, or I should report them, and make them pay for it. They were all on horses. Robert Halliburton jumped off his horse, and said, 'Ned, God damn you, I can whip you.' I said, 'No, I have done nothing for you to whip me for;' and he then said, 'By God, if you will come out of the yard, I will whip you.' I said, 'I am not coming out of my yard to fight you.' He started in the yard, took hold of the gate to open it, and my brother, Joe Mullins, went to the gate and held it, and told him not to come in. At this time the defendant, Roy Halliburton, who was on the ground, got on his horse, and said, 'By God, I can show you better than I can tell you,' and started off on his horse in a run towards Waelder. While he was gone, Robert begged my pardon, and he and the other parties started off. Defendant being gone only a few minutes, came running back with a Winchester gun, up to my gate. I had gotten up, and was standing in the yard between my house and crib, with my baby in my arms. Defendant, as he came up, said: 'By God, clear the way; I will lay him to the ground,' got off his horse, threw his Winchester down on me, and shot at me. I began to get out of his way, and he shot at me again, and, as I was trying to get behind the crib out of his way, he fired at me the third time. He did not hit me. As he fired the third shot, Hickey Halliburton ran up and caught defendant's gun. The other parties were up the road, but close enough to see what was going on. I don't know what I did with my baby. I was considerably excited. My wife and children were hallooing and crying. I don't know where the bullets hit. They could not have hit the house, for I was not between defendant and the house. I was between the houses, and they were about twenty or twenty-five steps apart. There was nothing between the defendant and myself except a wire fence. At the third shot I was running from defendant, and ran off in the field." Joe Mullins testified as did Ned Mullins. This is the entire statement of facts. The law of aggravated assault is not applicable to this evidence, and the testimony fully supports the conviction.

The judgment is affirmed.

*Affirmed.*

Judges all present and concurring.