## IRA GRANTLAND v. THE STATE.

### No. 1609.   Decided March 27, 1912.

### Rehearing Denied April 24, 1912.

**1.—Aggravated Assault—Complaint by Prosecutrix.**

Where the bill of exceptions, as accepted, showed that the defendant first asked the prosecutrix to whom she first made complaint of defendant's conduct in assaulting her, and that thereupon State's counsel brought out the fact that she told her mother about the trouble immediately on reaching home, without giving the details, there was no error.

**2.—Same—Evidence—Rebuttal.**

Where the State's counsel, after defendant had introduced his testimony and rested the case, recalled the prosecutrix in rebuttal and asked her about the particulars of the assault upon her by the defendant there was no error.

**3.—Same—Argument of Counsel.**

Where, upon trial of aggravated assault, the issue was sharply drawn between the testimony of the prosecutrix and defendant and his witnesses, there was no error in the argument of State's counsel in saying that if the jury acquitted defendant, they must believe that the prosecutrix committed perjury.

**4.—Same—Sufficiency of the Evidence—Conflict of Evidence.**

Where, upon trial of aggravated assault, the evidence was conflicting, but sufficient to sustain the conviction, there was no error.

Appeal from the County Court of Dallas County at Law. Tried below before the Hon. W. F. Whitehurst.

Appeal from a conviction of aggravated assault; penalty, a fine of $500 and twelve months confinement in the county jail.

The opinion states the case.

*Wiley & Baskett,* for appellant.

*C. E. Lane,* Assistant Attorney-General, and *R. M. Clark* and *Currie McCutcheon,* for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of an aggravated assault.

1. The first bill of exceptions recites that while the prosecuting witness, Georgie Stevenson, was on the stand she testified to matters which constituted the assault and that the assault occurred about 3

o'clock in the afternoon; that when she left appellant's office, where she lays the scene of the assault, she went out on the street and met a young lady friend with whom she had an engagement, and they went to a candy kitchen and about over town until about 5 o'clock, and then got on a street car to go home, at which place she arrived about 6 o'clock, where she saw her mother and that the defendant was not present. The bill further recites that no testimony had been offered tending to show that the witness had at any other time made a statement of the transaction different from what she had testified on this trial, and no witness had been introduced impeaching said witness for truth or veracity; that thereupon the State placed Georgie Stevenson on the stand in rebuttal, and asked her the following question: "When you got home that evening, tell the jury whether or not you told your mother what this defendant here had done to you?" Various objections were urged to the introduction of this testimony, which being overruled, the witness answered: "Yes, sir; I told her as soon as I got home." This bill further shows that the State then called Mrs. Stevenson, mother of Georgie Stevenson, and proved by her that her daughter told her as soon as she reached home. Her language was, "Yes, sir, she told me——" Objections were also urged to this as to the other testimony. The court signed this bill with the explanation: "The defendant asked the witness Georgie Stevenson, on cross-examination, when she was first upon the witness stand, whom she told about this trouble. The witness replied that she met one of her neighbors on the street car while returning home and she told her about this trouble with defendant. That she told her mother about the trouble immediately on reaching home. The details of what occurred between this defendant and Georgie Stevenson were not permitted to be told by Mrs. Stevenson. Mrs. Stevenson was only permitted to state that her daughter reported the matter immediately on reaching home. The conversation Georgie Stevenson had with her mother was not detailed by Georgie Stevenson. She stated that she reported this matter to her mother. The county attorney did not offer this testimony until after the defendant asked Georgie Stevenson who she told about this trouble." As qualified by the court in approving the bill, we are of opinion there was no error. The bill was accepted with the qualification which stated that the appellant first asked in regard to whom Georgie Stevenson first made such statement about the matter and to whom she made complaint.

2. Another bill recites that Georgie Stevenson testified that she was nineteen years of age at the time of the alleged assault, and that after she had gone into defendant's office he caught her hand and held it, and put one arm around her waist and held her and tried to raise her skirts with the other hand, the county attorney after the defendant had put on his testimony and rested, recalled said witness, Georgie Stevenson, as a witness for the State in rebut-

tal, and asked her the following questions, to wit: (1) "State whether or not the defendant put his hands——your breasts?" (2) "State whether or not he put his hands on your limbs?" and (3) "Did he put his hands under your skirts?" Various objections were urged to these questions, that they were leading and suggestive, and the witness being a State's witness and having testified to what had occurred, same suggested the answer desired. These objections were overruled by the court and the witness answered: (1) "Yes, he put his hands on my breast, above my dress. I had on a low-necked dress and he put his hands on me up there." (2) "Yes, he put his hands on my limbs," and (3) "Yes, he put his hands under my skirts." The bill is qualified as follows: "The defendant while on the stand was asked these questions: (1) 'If he did not put his hand on Georgie Stevenson's breast; (2) if he did not put his hands on her limbs; (3) and if he did not put his hands under her skirts.' To each of said three questions defendant answered in the negative. Georgie Stevenson was asked the question marked 'No. 1,' in this bill of exceptions and stated, 'Yes, I wore a low-necked dress and defendant put his hands down between my lace collar and my breast.' On counsel for defendant objecting to the questions marked No. 2 and No. 3, the assistant county attorney withdrew these questions and asked the witness where the defendant put his hands. The witness gave the answer as shown in this bill of exceptions." We think, as qualified, there was no error shown in this matter. It was clearly provable on the part of the State that the defendant put his hands on the girl's body and the different places mentioned, and the fact that it was introduced in rebuttal would not render the testimony inadmissible. It was a part of the transaction itself. It was part of the assault and was clearly admissible testimony.

3. Another bill recites that the State only introduced one witness to the alleged assault, to wit: the assaulted girl, and that thereafter, during his argument, the assistant county attorney said to the jury: "If you acquit this defendant you must believe the witness Georgie Stevenson committed perjury." Appellant objected and requested a charge to the effect that before they were authorized to find a verdict of guilty they should find that the State of Texas established every material allegation, beyond a reasonable doubt, and "unless you so believe beyond a reasonable doubt, you will acquit the defendant. You are here charged that in order to acquit the defendant it is not necessary for you to believe or find that anyone has committed perjury or sworn falsely, and you are charged that the argument of the assistant county attorney that if you acquit the defendant you must believe that the witness Georgie Stevenson committed perjury was improper, and you will not consider same for any purpose whatever, but will wholly disregard same." This charge was refused. The court signs the bill with the qualification that the

language used by the assistant county attorney was as above stated, but in that connection he also said: "There can be no question of a mistake on her part; it either happened as she said it happened, or else she has told you a wilful falsehood. There is but one witness for the State in this case; if you believe her, you must convict— and I do believe her." We believe the argument of the county attorney was permissible. The issue was sharply drawn, the girl making out a complete case of assault. The appellant denied this by his own testimony and the testimony of three other witnesses, two of whom were in such position that they ought to have seen the assault if it was committed. One of them especially testified that she was in the office during the entire time the girl was in appellant's office. This was the fourteen year old son of appellant. The issue was as sharply drawn by the testimony practically as could be. The girl swore unequivocally to the assault upon her and, if true, it was an outrageous one. If it was not true, as the assistant county attorney stated, there could be no mistake. She testified positively to it, and it was either true or false, and if false it was certainly clearly and unmistakably false, and therefore it would be perjury. The court was not in error in refusing to withdraw this argument from the jury.

4. It is claimed that the evidence is not sufficient. That the testimony of the appellant, including himself, son and two other witnesses, some of whom were present a part of the time and one or two of them practically there all the time, one of the ladies contradicted the girl emphatically in every particular. The girl's testimony was equally as emphatic—as emphatic as her testimony could make it—that the appellant did assault her. Of course, it is not the province of this court to solve those questions. There was an issue sharply drawn, clearly and forcefully by the witnesses on the conflicting sides. The jury believed the girl's testimony and convicted. It will be remembered that under our Code of Criminal Procedure and jurisprudence it is peculiarly the province of the jury to weigh the testimony, pass on its credibility and reach their conclusion. This is not a case where there was a failure of testimony, but it is a case where the conflict is irreconcilable, therefore, a case peculiarly within the province of the jury to settle. This court did not see and hear the witnesses; the jury in the trial of the case did. The State's case is sufficiently supported by the evidence of the girl; the jury believed her. We can not disturb the verdict on that ground.

The judgment will therefore be affirmed.

*Affirmed.*

[Rehearing refused April 24, 1912.—Reporter.]